**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TRUSTEES OF THE PAINTERS UNION
DEPOSIT FUND,

        Plaintiff,

v.

ASTOR DECORATING & PAINTING CO., and
TOMA STANAJ

        Defendants.

        CIVIL CASE NO. 04-60030
        HON. MARIANNE O. BATTANI

_____/

**OPINION AND ORDER DENYING**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

Before the Court is Plaintiff's Motion for Summary Judgment (Doc. #31). The dispute involves Defendants' liability under a collective bargaining agreement that was signed by Stanaj. Plaintiffs have filed for summary judgment seeking to collect delinquent fringe benefit contributions, liquidated damages, and attorney's fees.

Defendant Astor Decorating & Painting ("Astor") is a Michigan corporation owned and operated by Toma Stanaj ("Stanaj") and his wife, Julie Stanaj. Stanaj is of Albanian descent and cannot read or write English. Defendants also assert that Stanaj has only a rudimentary understanding the spoken English language.

As a rule, Astor did not bid on jobs that required union participation because of the size of the company and because Stanaj did not want to join a union. Astor also does not have its own employees, but rather, subcontracts out the work it is awarded to independent contractors.

Astor was successful in its bid to paint the Kendalwood Hotel, a large commercial project in Farmington Hills, Michigan. After approximately 40% of the work was done, Stanaj was approached by the foreman of the general contractor, Wise Construction, Inc., for the Kendalwood project and was informed that he would either have to join the Painters' Union ("Union") or would be forced to stop working on the Kendalwood Hotel.

After consulting with his wife, Stanaj decided that because of the investment of labor, time, materials, money, and the fact that he had bid on no other upcoming projects, which eliminated the prospect of income for the foreseeable future, he acquiesced to the demand that he join the Union. Stanaj believed, and was led to believe through assurances of Union personnel, that his membership in the union would be limited to the duration of his work on the Kendalwood Hotel.

On March 8, 2000, Stanaj went to the Union Hall by himself. It is at this time that Stanaj alleges that he was presented with a single two-sided document. This document contained the first and last page of a 12-page Collective Bargaining Agreement ("CBA"). Stanaj signed page 12 of the C.B.A. in two places: one binding Astor to the CBA, and the other binding Stanaj personally for all wage and benefit payments owed to the Union under the CBA. Astor remitted the required contributions for the remainder of the Kendalwood project. Stanaj believed that his Union membership and obligations ended after the contracted for work was finished on the Kendalwood Hotel. Thereafter, Astor ceased remitting payments to the Union.

On June 11, 2003, the Union terminated the CBA with Astor, a short time after the CBA

with Astor automatically renewed.[1]  Plaintiff filed the instant lawsuit on February 18, 2004, seeking delinquent benefit payments and liquidated damages for the period spanning October 1, 2001, through June 11, 2003.  Plaintiff filed for summary judgment claiming that Defendants are contractually bound by ERISA to make fringe benefit contributions to Plaintiff for each hour work by all Astor employees, whether a union or non-union employee, and that Defendants' failure to pay subjects Astor, and Stanaj personally, to liability for delinquent payments, liquidated damages, and attorney's fees.  Defendants have resisted the instant motion on numerous bases concerning the formation of a valid contract.  Defendants also insist that even if there was a valid contract between the Union and Defendants, that Defendants are not liable for the contributions that were calculated based on the number of hours worked by non-employee, independent contractors.

## II. STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

A trilogy of United States Supreme Court cases - Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,  (1986); Anderson v. Liberty Lobby Inc., 477 U.S. 242,  (1986); and Celotex Corp. v. Catrett, 477 U.S. 317,  (1986) – set the standards for deciding whether to grant a motion for summary judgment. As the United States Supreme Court has ruled:

---

[1]  The CBA automatically renewed because it included what is commonly referred to as an "evergreen clause."  An evergreen clause requires written notification of a party's desire to terminate the agreement.

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

Celotex, 477 U.S. at 322.  The Court of Appeals for the Sixth Circuit, in turn, has created guidelines in administering the principles set forth in the three Supreme Court cases above.

The movant bears the burden of demonstrating the absence of all genuine issues of material fact.  See Hager v. Pike County Bd. of Educ., 286 F.3d 366, 370 (6th Cir. 2002).  The initial burden on the movant is not as formidable as some decisions have indicated.  The moving party need not produce evidence showing the absence of a genuine issue of material fact.  Rather, "the burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue.  FED. R. CIV. P. 56(e); Chao v. Hall Holding Co., 285 F.3d 415, 424 (6th Cir. 2002).  The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor.  See Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Sagan v. U.S., 342 F.3d 493, 497 (6th Cir. 2003).

"A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties."  Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984)(citation omitted)(quoting Black's Law Dictionary 881 (6th ed. 1979)).

4

To create a genuine issue of material fact, the nonmovant must do more than present some evidence on a disputed issue.

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

Anderson, 477 U.S. at 249-50.

The evidence itself need not be the sort admissible at trial. Tinsley v. General Motors Corp., 227 F.3d 700, 703 (6th Cir. 2000). However, the evidence must be more than the nonmovant's own pleadings and affidavits. Smith v. Campbell, 250 F.3d 1032. 1036 (6th Cir. 2001). The mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient evidence upon which a jury could reasonably find for the non-movant. Anderson, 477 U.S. at 252. Also, where the non-moving party must meet a higher burden of proof than usual, that party must meet the same burden in resisting the motion for summary judgment. Id. "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." Id. at 256. "No genuine issue of material fact exists when the 'record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" Michigan Paytel Joint Venture v. City of Detroit, 287 F.3d 527, 534 (6th Cir. 2002) (quoting Matsushita, 475 U.S. 574 at 587).

**III.   ANALYSIS**

   **There is a Material Question of Fact Whether Fringe Benefit Payments are Due if Astor Did Not Have Any "Employees."**

Defendants contend that Astor has no "employees" as that term has been defined by the

Supreme Court. <u>Nationwide Mutual Ins. Co. v. Darden</u>, 503 U.S. 318, 323 (1992); <u>Cmty. for Creative Non-Violence v. Reid</u>, 490 U.S. 730, 740 (1989). Defendants contend that it hires out all work Astor successfully bids on to independent contractors, as that term has also been defined by the Supreme Court. <u>Id</u>. Thus, Defendants claim that they owe none of the alleged delinquent contributions, because under the CBA, Astor is only required to make contributions based on the number of hours worked by each Astor "employee," and not based on the number of hours worked by each independent contractor hired by Astor.

By its terms, the CBA only covers "employees." Fringe benefit contributions to Plaintiff is based on the number of hours worked by each employee. While it is true the CBA, in Art. XI, prohibits non-union subcontracting, the consequence for breaching Art. XI is the payment of a $1,000 fine to the Union. Plaintiff's Ex. A, at pg. 5, Art. XI, Section 1. Upon breaching Art. XI a second time, Plaintiff may cancel the contract, as well as collect any fringe benefit contributions found owing under Art. XVIII. <u>Id</u>. Plaintiff contends that regardless of how Defendant classified its workers, those workers are employees for purposes of the CBA. In support of this contention, Plaintiff points to Art. XVIII, which requires that the employer's contributions to the fund be based on each hour worked "by all employees employed by him and covered by this agreement." <u>Id</u>., at page 8, Art. XVIII, Section 1. Plaintiff further points to the language in Art XVIII that states,

> Whenever is has been determined that an Employer has violated Article XI, Section 1, hereof, by the payment of bonuses to an employee or employees on a regular or periodic basis, such Employer agrees that the Trustees of Painters Union Deposit Fund may convert the bonus payments to an hourly rate of pay to establish the number of hours for which contributions shall be made to the Painters Union Deposit Fund by such Employer.

<u>Id</u>., at Section 2. However, again by its terms, the CBA explicitly defines "employee" as:

"Employee: The term 'Employee' shall include all journeyman, foremen, or any employee who acts in the capacity of foreman, supervising the men directly on the job and apprentices hereinafter set forth." Id., at page 1, Art. 1, Section 3.  In no place does the definition of "employee" include "independent contractor," and the only remedy for breach of the Art. XI, Section 1 prohibition is fining the employer and subsequent termination of the CBA.  Likewise, Plaintiff has not pointed to any clause in the CBA, or any authority that supports the argument that it is immaterial whether an employer utilizes independent contractors, rather than employees, in the determination of the amount of fringe benefit contributions owed under similar terms as the CBA in question.  Looking at the four corners of the CBA, whether the parties intended to include non-union independent subcontractors in the definition of "employee" is, to say the least, unclear.  Under the *contra proferentem* canon of construction, any ambiguity is construed against the drafter.  The ambiguity in this contract, is at a minimum, sufficient to raise a material question of fact as to whether Defendants owe the alleged delinquent contributions calculated on the number of hours worked by independent contractors hired by Astor.  Because the Court finds a material question of fact regarding liability for contributions calculated based on the hours worked by independent contractors, the other reasons for resisting the instant motion raised by Defendants need not be discussed.

IV.     **CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's March 24, 2005, Motion for

7

Summary Judgment is **DENIED.**

                                        s/Marianne O. Battani
                                        MARIANNE O. BATTANI
                                        UNITED STATES DISTRICT JUDGE

DATED: August 12, 2005

## CERTIFICATE OF SERVICE

Copies of this Order were mailed to Richard M. Selik and Mel R. Partovich on this date by ordinary mail and/or electronic filing.

                                        s/Bernadette M. Thebolt
                                        CASE MANAGER